Good morning. The first case we'll hear is Gonzales v. Owens Corning, number 16-2653. May it please the court. I'm Robert Klonoff, counsel for the plaintiffs. I will reserve four minutes for rebuttal. That's granted. I plan to focus on the district court's erroneous refusal to certify a four-state class action on the issues of product defect and misrepresentation. Is that because you agree that you really don't have a basis for asking for a nationwide class interview on v. Mr. Klonoff? Can we set that aside? Certainly the nationwide classes are much more difficult, but what happened is these were actually four individual lawsuits in different jurisdictions, and several of the cases were transferred to Pennsylvania. We've decided to take it on a bite-sized basis because we know, and this court has said, that when you're dealing with the laws of 50 states, that's far more difficult than four states. We've also carefully pruned the claims. The court will note there are many claims that have been brought in each of the cases, and we're only focusing on the claims that we think are appropriate for class certification. Before I get into the four-state case, I wanted to spend just a minute on the bankruptcy issues. Before you go there, I want to make sure I understand. Am I understanding correctly that you're maintaining your legal position, that you have a justiciable B-1B class on a nationwide basis, but you don't want to spend your time talking about it today? You want to focus only on the four-state class? Well, no, I am going to spend a couple minutes at the outset on the nationwide class, Your Honor. That's where I was going. I apologize if that was unclear. First of all, both the district court and Owens Corning say that they want the legal holding and right to apply to all class members across the board, and the district court expressly found that all class members have an interest in obtaining our ruling on the applicability of right, and the district court recognized the importance of the right issue to potentially thousands of unnamed class members, but the court said that because of collateral estoppel, we didn't need to worry that the ruling is automatically going to apply. I thought the district court's reasoning was something along these lines. It's either moot or it's not ripe. It's either moot because we answered the question, the right couldn't be clearer in saying that Frenville applies in certain circumstances and Grossman in others, or it's not right because when you get to specific people, the Frenville test is a fact-specific one, so you can't answer it specifically. You'll have to answer that on an individualized basis. We're not asking for certification on the fact-specific part. We're asking for it on the legal ruling. Isn't that the classic example of an advisory opinion? You want us to say, hey, the Frenville test is the one that applies. That's the one that applies. Out there, if you're wondering about that, that's what applies. Now, how is that not an advisory opinion? Because it adjudicates the rights of the parties. What we're afraid of is that somebody could file a lawsuit in Texas court, for example, and just as it was doing before, Owens Cornyn could say, you're barred by the bankruptcy. Yes, somebody could. That's the point, right? Somebody could. It's not somebody has. This is not an actual dispute. It's somebody could. Isn't that the problem? Well, no, this is no different than many cases brought under the Declaratory Judgment Act where the rights are determined in a general way. It's no different than an issue class under 23C4 where, for example, you decide the issue of pattern and practice, and that's it. Or you decide defect the way the Butler case did. So we think that it absolutely adjudicates the rights of the parties. And the problem is – Well, Mr. Klonoff, wait, wait. In all those examples you just gave, the class is defined in a way where the people who are going to be potentially bound by it, they actually have some kind of a claim. Here you've acknowledged you can't get that claim for individuals in this class because you don't know whether Frenville is going to apply or how it's going to apply, I should say, to give them relief. You've acknowledged that. You can't do that because it's a fact-specific test. Well, the problem is – Does it distinguish this from those kind of circumstances? No, it doesn't, because the problem is down in Texas, Owens Corning could come in and argue that the Grossman's is the right test and that the court should ignore the court's right decision, and then that person is out without any possibility of adjudicating their individual facts at all. We don't understand why Owens Corning is opposed to this. They say they want the judgment to apply. This is exactly the issue that we saw in the Nassau strip search case where the court said you need a class action. Well, you had a claim there. There was an actual claim in the Nassau County case. There was a 1983 claim that people said we were strip searched, we were subject to this, and now we're entitled to some relief, and now you have to examine the law to tell whether that was actually a constitutional violation. Here you're saying maybe somebody in Texas someday might file a claim, and if they do file a claim, then maybe a Texas court maybe will say that Grossman's is the right one. I understand that argument, Your Honor, but it's the same argument you could make about 23C4, that deciding an issue is not the same as deciding a claim, and we're long past that. There are many, many cases that have resolved issues, and really all we're asking is essentially the same thing, the issue resolution. Do you really call this an issue, though? It's what law governs. You're asking for a legal declaration, which seems to me to be somewhat different than a typical issue class, isn't it? Well, I mean, Rule 23 applies to questions of law or fact, and there are certainly cases where the upshot of a class action is deciding a question of law. So we don't understand the problem here. We were looking for a way so that Orms Corning wouldn't turn around and basically abrogate this court's decision and write, and that's the problem we face. And I would direct the court to Gale v. Warden, which involved similar issues. The argument there was you don't need a class action because the issue is already decided. And the court said that courts should be very cautious in denying class certification on the theory that you don't need, and it explains exactly the problem that we face here. The problem is that we can't control what Orms Corning is going to do in another case. So what you want us to say is that thing we said in Wright, we really meant it. No. That's the opinion you want us to write. Yeah, we said that already, but we're saying it again, and this time we really meant it. No, we want it embodied in the judgment that applies to all class members. That's what we want, so that they actually have a judgment. There's a big difference between a judgment that's applicable only to the two plaintiffs, which is what we have now. But how can we render that judgment? You say you want in one breath, Mr. Klonth, you say we are not asking you to decide this on an individual basis, and then you say we want a judgment that will bind everybody. Isn't that exactly what you're asking for? You're asking for us to say something which is either so vague that it has no applicability to individuals, in which case it's advisory, or you want something binding, which is something the district court noted a friend or lower allows. So you're going to have to take that on. Either you're asking for something too vague to mean anything, or you're asking for something very specific, and then you get into the problem. I don't think this is vague at all, Your Honor, with all due respect. We're asking exactly the same thing that the court said in Wright. We're asking that if there had been five plaintiffs in Wright. Thank you, thank you. Wait, stop. You're asking for exactly the same thing. In Wright, we said specifically, this is how this will apply to Mr. West. This is how it will apply to Ms. Wright. It was a fact-specific inquiry and a statement as to each of those individuals. So if you're asking for the exact thing that we did in Wright, aren't you asking for something which can't be done because, by your own admission, you're opening brief page 31, we can't do that because it's fact-specific. No, the court in Wright could have said, here's the rule. Grossman's is not retroactive. They could have said it back. So when I said what the court did in Wright, I meant part one of the opinion, and that's what we're asking for. You want Wright to have national impact rather than just Third Circuit impact. Yes. For consistency's sake, but how do you distinguish Coffin? Coffin wasn't a class action that doesn't present any of these issues at all. We think that was a very narrow case that really has no applicability. The unique problem here is that you have a class action, but the class hadn't been certified. If the class had already been certified, there would have been no issue. The summary judgment ruling would have applied to everyone, and the reversal would have applied to everyone. We're trying to figure out a solution, Your Honors, to what Owens Corning and the court say they want. Everyone agrees we want the decision to apply anywhere, and right now there's an easy escape valve where Owens Corning can go all over the country and basically tell courts they're not bound by the case, and that's very troublesome to us. And as soon as you do that, as soon as they do that, I assume you'll say two things. One, right applies, it should bind them as a matter of collateral estoppel, and the second thing you'll say is they should be estopped as a matter of judicial estoppel because they've said in open court and they've said in court filings that it applies. They can't walk away from that. We can say that and the court can do whatever it wants. The court, because of collateral estoppel being discretionary, But you just said you're worried about them changing course. They really can't, can they? Absolutely they can. There's nothing we can do to stop them. That's what the court in Gale says. It's controversial to stop them. Because the problem that the court addressed in Gale was the fact that we can't control what the defendants are going to do. The defendants can go somewhere else. You can control what they've already done, and what they've already done is they're on record in this case of giving you what you want on this issue. But we can't. It would be passing strange for a court then. It would be really strange for them to go to another court and say, Well, you know, we were lying to the Third Circuit. We were joking. We didn't really mean it. It would be even more strange if they went into another court and said, Yeah, we did say that in the Third Circuit, but you do what you want, Judge. Well, that was exactly the situation in Nassau Strip. There actually had been a prior Second Circuit affirmance on the very issue, and the court was still worried about the invocation of collateral estoppel. So we can argue all we want in Texas and Iowa, but we can't control what those courts do unless we have a judgment, a class-wide judgment, because it's absolutely clear, and I would urge the court, if you haven't, to study the amicus briefs of the law professors. They say the same thing, that collateral estoppel, when you're talking about offensive mutual collateral estoppel, we can't control what the defendants are going to do. They didn't say anything about judicial estoppel that I saw in their brief, and I haven't heard you respond to that either, Mr. Cronin. The answer is a Texas judge or a small claims court or whoever it is, they don't have to respond. Estoppel can be ignored. A judgment that embodies the class cannot be ignored. We wanted to work with Owens Corning to figure out a way to make the decision apply, and they've just been adamantly opposed, and that's the reason why we think there's a problem here. Well, maybe they're concerned about asking for a non-justiciable order from a court. Well, then we could have figured out another way to do it. Our concern is they're planning to run from that decision and argue elsewhere in the country in situations where I'm not there and where Mr. Phillips is not there, and, of course, I trust him and his word. That's what we're worried about, the small claims court situation or whatever it is. We want a judgment to embody legally all of these people. Then there's no argument about the court's discretion whether to apply Estoppel or collateral Estoppel because we have the judgment. I see my time is up. I have a question for you, something a little bit different. Should this court adopt an ascertainability requirement for class certification pursuant to Rule 23b1b? No, we don't think that. The court's already said in Shelton that it doesn't apply to B2, and the analysis is exactly the same because you've got... Well, isn't it more akin to B3? I don't think so. There are both situations where you have mandatory classes with no opt-out right, so I think it's very similar. In any case, this is an incredibly weak case for ascertainability. The court in the city select auto case just held very recently that affidavits coupled with an overbroad database would be sufficient to establish ascertainability. In this case, we have all kinds of indicia of ascertainability. And remember, in Carrera, the court said that the ascertainability problem is that you can't ascertain anyone. So in small claims cases where you have a consumer purchase and no receipts, these are big purchases, so lots of people are going to have records. Some of our plaintiffs have records. Owens Corning can determine for purposes of the warranty whether it's Oak Ridge or not, and they deny warranty claims based on the fact that it's not Oak Ridge. There's the release tape, which is kind of like the overbroad database. It doesn't tell you it's Oak Ridge, but it tells you that it's Owens Corning. Let me shift gears on you, Mr. Clon, with my colleague's indulgence. I want to ask you a quick question about your challenge to the district court's Daubert ruling. If I understood the briefing correctly, your assertion is that the district court abused its discretion because it kept Mr. Rutila's testimony out because it was only looking to industry standards. And the question that was coming to my mind was, it looked like the only thing Mr. Rutila did was examine 300 shingles that were submitted in connection with warranty claims. Did I understand that correctly? With all respect, Your Honor, there's much more to it. If I could just very briefly indulge the court, I know I'm way over the top. But stick with me here. The universe of things he looked at and did an examination of, in terms of the actual shingles, were a sample from people who had made warranty claims. Is that accurate? Well, it's partially accurate, if I could explain. So he looked at about 300 shingles that were from warranty claims and actually tested those. There was a bigger group of 700 that he looked at. He looked at, or his assistants looked at, the plaintiff's homes. And he combined that with a number of other things. He looked at volumes of Owens Corning specifications. He looked at the literature. And he looked at the voluminous Owens Corning database. And so he put all of that together. That's point one. Point two is, and this is a very important point to the court, most of Rutila's testimony was accepted. The part that was stricken was the testing of the 297 shingles. And that's the point I'm asking about, right? That's the part that was excluded. That's what I'm trying to ask about. And that was stricken. And you protest that, right? And my question to you is, how is it an abuse of discretion for a district court judge to say, in effect, the sample size you've got here is vanishingly small and is skewed. It is not a random sample. By definition, it is a sample of shingles which are purported to be faulty because they're warranty claim shingles. How is it that? Explain to me how it's an abuse of discretion for the court to take that step. It's an abuse of discretion for several reasons. First of all, her primary ground, and really her only ground for quite a while from the Daubert hearing itself, for excluding the testing was based on a stipulation from Owens Corning. Owens Corning stipulated initially that they had all of their samples. Did she have a reliability issue with it, Mr. Kwan? I'm just saying that the court changed the rules on the stipulation. We would never have stipulated, and that was an abuse of discretion. And that was the basis for excluding the testing. Read that to the side. We're burning time here, and I apologize, but I really want an answer to this question. Did she have a reliability problem with this small sample being just the warranty claim shingles? So on that, and putting aside the stipulation, first of all, that's all there was. Owens Corning is the one that didn't save all of the shingles over time so that we could actually have done the testing. And this is very similar in that sense to Tyson's food. So you're saying that's some kind of discovery sanction? It's not a sanction. The reliability issue should be ignored. No, it's not a sanction. It's what the court said in Tyson's food, that you have to deal with the situation you have, and that's why in Tyson's food the statistical evidence was allowed. So that's point one. Point two is Rutila explained in great detail that this is how it's done in the industry. That's how Owens Corning does it. That's how its own expert did it. That's how Owens Corning does it for purposes of warranty claims. And so she abused her discretion by imposing a statistical standard here that's totally out of whack with what's done in the industry, and that's the problem. Statistical significance changes. The science of statistics changes industry by industry. Yes, that's what you're saying. That's what the court has said. I got your position. I got your position. Okay. Thank you, counsel. We'll hear you on rebuttal. Thank you very much. Good morning, Your Honors, and may it please the court. I'm Carter Phillips. I represent Owens Corning in this matter. I was, frankly, a little shocked that my good friend decided to focus primarily on the nationwide class action because for reasons that I think the court has already articulated probably better than I could anyway. That's what we were asking him about. I think he was prepared to talk about other things. I mean, it seems to me clearly he's asking for an advisory opinion from the court. You've already rendered your opinion. We've made it as clear as we possibly can. Owens Corning has no intention of asserting that defense under any circumstances, and the fundamental difference between this case and every other case is that all you're talking about is a single defense. We don't know whether these claims will ever be brought or under what circumstances. It's a purely advisory opinion. You've already spoken to the issue. There's no basis for entering a class. Why don't you go to the four-state class then and answer the question, Mr. Phillips, about why the district court would say no to class certification when the court itself said there is at least a common issue as to the warranty claim. We can see a warranty claim here that's common to all classes, and then she kicks it on typicality, but isn't a typicality thing with the class representatives easily fixed? No, I think the answer to the question is unless you're going to do it as a C-4, and I'll put that aside for a moment, but if you're just looking at it as a B-3 issue, the question of predominance becomes overwhelming, and indeed if you look at the briefs from my colleagues on the other side, they don't deal with causation, they don't deal with damages, they don't deal with injury. Those are all issues that have to be individually determined. Indeed, ultimately, even the misrepresentation issue ultimately turns on whether or not there's a proven defect, and in order to determine whether there's a defect, you have to look at every individual shingle. That's the whole point of that inquiry. There's a reason why this is a non-ascertainable class, candidly, but you don't have to decide that issue because any of the other, except for numerosity, it doesn't satisfy any of the other standards for 23-B-3 certification. If I understand their one warranty issue, the one as to which the court said, okay, I could see a commonality, a common issue, it's the idea that people were deliberately misled the way your rule for last four language was posed, right? It turned on the length of the warranty. If you were told you had a warranty for 20 years, did that mean that they warranted that, in fact, it would not degrade or otherwise within that 20-year period? And what the court said even as to that, that even among the named plaintiffs, two of them, didn't infer from the period of the warranty the fact that it was a misrepresentation of any sort. Right, and then the court later said, in effect, but you failed predominance, 23-B-3, right? Yes. So walk us through that, if you would. Why is it that the court could say, this is common, set aside the commonality for a minute, because I assume that could be fixed, set aside the commonality issue. How is it that it's common to the class, but that class-wide proof wouldn't predominate, class-wide issues wouldn't predominate? If you looked at how you're going to try one of these cases, okay, you're going to have to bring forward the idea that there's been some representation. And on a class-wide basis, you could say there's been a representation based on the duration of the warranty, or at least in theory you could do that. But then you still have to, in order to try the case, right, you're still going to have to decide, is there, in fact, a defect? Are any of these shingles actually defective? And there's no way to ascertain that without literally going to the roof and finding whether or not they're defective. So it may or may not be a misrepresentation at all under those circumstances. And then you're going to have to determine what was the causation, and then you're going to have to determine whether or not there's been any injury. All of those issues grossly predominate over the question of whether or not there's been some potential misrepresentation embodied in the warranty. And even on that, you wouldn't try it on a class-wide basis, because individual plaintiffs will have relied differently. Some of them may have believed, and I think it's inappropriate to reach that conclusion, it's a state law issue. But at the end of the day, as many plaintiffs are going to say, no, I never assumed that this thing was going to be perfect for 25 years simply because they gave a warranty. I assumed I was going to be compensated if, in fact, it didn't satisfy, last for 25 years. And that's what two of the plaintiffs in this case testified to, so that under these circumstances, it's not, even that's not, frankly, a class-wide, you wouldn't try that on a class-wide basis under these circumstances. You know, one of the points your adversary made was under Amgen, of course you've got to do rigorous certification analysis, but your adversary points out that what happened here was much beyond there. It was sort of a free-ranging consideration of the merits. How do you respond to that? Yeah, I don't think that's a fair characterization of the judge's opinion whatsoever. I mean, she consistently said that she was looking at whether or not this is a case in which you could decide in one fell swoop on a class basis any of the issues and whether those issues would predominate. Didn't she consider whether there was a reasonable inference that your client represented that these shingles would last 25 years? I mean, doesn't that go to the merits? Well, I think you have to evaluate that, but all she did was say, as to some of the plaintiffs, they didn't, that's not how they interpreted it, they didn't rely on it, and as to some of them, they did. That's saying you can't decide that on a class-wide basis. It's not saying that some of the plaintiffs, some individual plaintiffs, might have a legitimate cause of action. It may be that in Texas, if you warrant something for 25 years, that could be interpreted as a representation that it will remain good for 25 years. That's fine if that's the rule in Texas, but that's a very limited issue in a litigation in which they're asking for 4 million class members, none of whom are frankly ascertainable on claims that are based on 279 shingles. I mean, none of that provides any fundamental basis for certification under these circumstances, Your Honors. I asked your adversary about whether we should adopt an ascertainability requirement for Rule 23B1B. What's your position on that? My view of the world is the same as yours, which is the same as yours. I didn't say what my view is. I just asked the question. It feels more like a B3. It depends on how you're doing the B1A and B1B, frankly. If you keep them within the confines of what they're about, it probably doesn't make any difference. If you start to let it stretch so that it begins to look a lot like a 23B3 action, then you probably ought to impose an ascertainability requirement. But in this case, candidly, you don't have to decide that particular issue. We urge you not to go down that particular path at this point. Is there no other questions, Your Honors? I'll give you back to counsel. Thank you. Judge Jordan, you really hit the nail on the head. This is what's wrong with the Court's opinion. The Court finds common issues. It's exactly like that. Which opinion is wrong? Which opinion? I think the commonality versus commonality. No, the point that how can you say you can't certify these issues when the Court has already found commonality with respect to misrepresentation. That's absolutely our point, and the same thing is true on defect. Again and again, Joint Appendix 113, 144, 146, common issues. The defect issue applies across the board to the class. That's exactly our argument. And once you have that, you have the basis for class certification. And what Tyson Foods says is – Hold on. Need to head on Mr. Phillips' argument about predominance. Yes, that's where I was going. Tyson Foods and Butler say that just because you have some individual issues, if you have an overarching common issue, you can certify. And we quoted the exact language out of Tyson Foods. This is exactly the point in Butler. And we have in Volume 13 of the appendix the briefing in Butler and Whirlpool. They make all the same arguments there verbatim, what Mr. Phillips just said about the individualized damages, individualized limitations. And the Court said those don't matter. And look at what happened in Whirlpool. Well, hold on just a second, Mr. Clark. The Court said those don't matter because the Court made a factual distinction. It said, in example, in Butler and Whirlpool, you were dealing with essentially the same design. It was essentially the same design and it had a commonly asserted flaw. And this is a case in which you have multiple different designs in these shingles and multiple different assertions about how their problems have developed with them. And so Butler and Whirlpool just are inapplicable because they are factually different cases. Why is the district court wrong, wrong to the point of abusing discretion in making that kind of distinction? Well, number one, we're arguing that all the shingles suffer from the same defect. If we lose, we lose. And that's an issue for summary judgment. Well, isn't it an issue for class certification too, Mr. Clark? This goes to an assertion you made about, oh, it's a merit. She decided the merits. Isn't she obligated under hydrogen peroxide and other cases to dig in enough to see whether you, in fact, have on your design defect claim enough of a common issue that it could even go to a merits question, a merits hearing? All that she's supposed to do under Janne King and Amgen is determine whether we've offered the kind of evidence that could be tried on a class-wide basis. As Judge Wood wrote for the Seventh Circuit in Suchanick, class actions are just as appropriate in cases that are fated to lose as in cases that are fated to win. You can't draw that that broadly because if that's true, we wouldn't bother with class certification at all. We'd just say, yeah, take it to a jury. Go ahead. The whole point of class certification is to ask the question, do you have something here which can fairly be judged on a class-wide basis? And she looked at the evidence you brought forward and said, at least this is a design defect. I don't see it. I don't see how you can do this on a class-wide basis because of all the different kinds of shingles, different compositions. And frankly, looking at Mr. Rutila's stuff, I don't see how you've got even a basis on which to say defect with respect to the kinds of assertions he made from the sample size he had. And that goes to the point about the merit. She crossed the line. We offered substantial evidence that we would introduce at a trial that's common to everyone in the class, and the district court said that. All right. And that evidence is that there was insufficient asphalt in the shingles, right? As I understand the essence of your design defect claim, you're saying, well, these were within ASPE standards. They weren't up to snuff in terms of a 20- or 25- or 30-year warranty, and the reason for that was because the asphalt ratio was inadequate. Part of it's the asphalt. Part of it's the mass, the inadequate fiberglass. And our point is that to save money, Owens Corning cut costs. But it isn't just the expert testimony. It's the internal documents, which we think are very powerful. The judge went through them and said they weren't. May I ask a question? Oh, certainly. I don't understand your argument to be, though, that the percentage of asphalt in each of the many varieties of shingles was consistent. Is that right? It varied in that sense. So if it varies, doesn't it logically follow? If your thesis is less asphalt means weaker shingles, right? Correct. Yes. Okay. And if there are myriad percentages of asphalt in the shingles of the 4 million class members, doesn't it logically follow that the extent to which a shingle fails or doesn't fail in year 12 or year 18 or year 42 is going to be very, very individualized, depending upon the asphalt ratio of the shingle, including all other factors like what kind of roof is it on, what's the weather like? I mean, there are innumerable variables for each individual punitive plaintiff. But that's not our theory, Your Honor. Our theory is that the propensity to fail causes all the shingles to be worth less in value. And if I could just quickly give an anecdotal example that illustrates our theory. A contractor says to a consumer, you've got two choices on the shingles. You've got the 40-year Owens Corning, which have a variable design, and it's quite possible that your shingles could only last for 15 years. The other option is the XYZ 40. Those have enormous asphalt, enormous fiberglass. Those will last for 40 years. No consumer is going to pick the Owens Corning under that circumstance, particularly with the very, very weak warranty. It's a diminution in value. And the problem with shingles is that it isn't just one roll of the dice, it's hundreds. And so the possibility of having this design where your rule can fail, that's the essence of our claim. That's what Rutila explained, and that's our theory. The judge didn't like the theory. This goes back to your point about the merit. She said, this is a novel theory. It may be, and let's get on to summary judgment and trial and figure out if that's a good theory. But that's our theory, and our theory doesn't depend on the individualized circumstance. If we're right, every member of the class has suffered a diminution in value because they didn't get what they were paying for. And I submit my anecdotal answer proves the common sense point that we're making. Thank you, counsel. Thank you, counsel, for excellent briefing and argument on this very interesting case. I'd ask that you order the transcript. You can do so through the clerk's office and split the cost, okay?